UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN DANIE ASHFORD,

                Petitioner,                Case No. 2:10-cv-41

v.                                            Honorable R. Allan Edgar

CATHERINE BAUMAN,

                Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner currently is incarcerated at Alger Maximum Correctional Facility. His habeas petition challenges his major misconduct conviction for possession of a dangerous object. (Br. in Support of Pet. at 6, docket #1-2.) Petitioner was convicted of possessing a razor blade which he removed from his left pocket and flicked to the ground in front of one of the housing units. (*Id.* at 8.) The Major Misconduct Hearing Report provides a detailed account of the evidence presented at Petitioner's misconduct conviction hearing and the reasons for its conclusion, in relevant part:

> EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT:
> . . . Prisoner states he [did] not throw anything, I did not make any motions as [i]f I was throwing anything. Packet includes statement from [Officer] Brunning, that they found a razor blade just south of the light poles in front of the blocks. Officer states he identified the prisoner who threw the item as Ashford because he has had frequent contact with prisoner, prisoner has a unique walk, and was wearing a green doo rag. Prisoner Ashford states he was wearing a green doo rag. Prisoner states his pants do not have a left pocket and all the prisoners were told by staff they would be strip searched when they returned back to the unit by the officers, Prisoner witness[es] state they did not know they were getting searched, further that the kitchen pants have a left front pocket . . . Video footage shows two prisoners coming down the walkway. One prisoner has a distinct walk. That prisoner is seen entering unit 5 on a separate tape in closer view and [Hearings Officer] is convinced the prisoner is Ashford. Video footage in the computer is better quality then the CD version. It shows prisoner reach into his pocket and flick his hand as if to throw something. The location this occurred is the location the razor was found as reported by Brunning, approximately 37 minutes later. Prisoner had nothing further when asked.
>
> REASONS FOR FINDINGS: The misconduct report is detailed, supported by staff witness statements, prisoner statements, video footage, physical evidence, it makes sense and is found credible and convincing. Prisoner testimony it was not him it was the other guy with him is not believed. The tape does not show the second prisoner doing anythign [sic] in this area. Further, prisoners testimony the officer told them they would be shook down is refuted by his two prisoner witnesses, and it does not make sense the officer would make this statement. . . Although it can not be seen what was thrown, the video does show prisoner reach into the left side of his pants, and flick something into the area where the razor was found 37 minutes later. Hearings Officer is convinced based on video footage, Officer Brunnings [sic]

statement, reporting officers [sic] statement that prisoner Ashford threw the razor onto the ground as it was found shortly after the video tape shows ashford [sic] throwing something into this same area, and this area is heavily traveled, thus it is not believed the blade had been there a long time. A razor blade is classified as a dangerous tool. A dangerous tool in prisoners possession without authorization is dangerous contraband. Prisoner had no authorization to have the razor.

(Major Misconduct Hearing Report, Ex. N to Br. in Support of Pet. at 1, docket # 1-3.)

Petitioner raised one ground for relief in this petition.[1] His sole ground is that he was denied due process of law in violation of his Fourteenth Amended rights. He lists three ways he was denied due process, verbatim:

(1) THE HEARING INVESTIGATOR WITHOUT JUSTIFICATION FAILED TO ASSIST PETITIONER BY NOT OBTAINING REQUESTED DOCUMENTARY EVIDENCE FAVORABLE TO HIS DEFENSE;

(2) THE HEARING OFFICER WITHOUT EXPLANATION DENIED PETITIONER'S REQUEST AT THE HEARING TO HAVE REQUESTED DOCUMENTARY EVIDENCE PRODUCED; AND

(3) THE HEARING OFFICER DENIED PETITIONER ACCESS TO REQUESTED DOCUMENTARY EVIDENCE ABSENT THREAT TO INSTITUTIONAL SAFETY OR CORRECTIONAL GOALS.

(Am. Pet. at 8, docket #4.)

---

[1] Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971), cited in *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir.1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir.1990). It is not entirely clear whether Petitioner actually exhausted his claims. However, a habeas corpus petition may be denied on the merits, notwithstanding the lack of exhaustion. 28 U.S.C. § 2254(b)(2). Because the claim lacks merit, the Court need not address the exhaustion issue.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

## Discussion

Petitioner asserts that the hearings investigator and hearings officer violated his due process rights to present evidence for his defense. The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (I) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the

disciplinary action. *Wolff*, 418 U.S. at 563-69. The right to call witnesses or present evidence, however, is not absolute. *Id.* at 566. The United States Supreme Court explained:

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Id.*

The MDOC satisfied the first and third due process requirements of *Wolff* in Petitioner's case. On July 10, 2007, the MDOC issued a major misconduct ticket charging him with possession of dangerous contraband. (Br. in Support of Pet. at 5; Ex. D to Br. in Support of Pet. at 4.) The misconduct hearing was held eight days later on July 18, 2007. (*Id.*; Ex. N to Br. in Support of Pet. at 1) After the misconduct hearing, Petitioner received a written report of the hearing, which detailed the evidence relied on by the hearings officer and the findings of the hearings officer. (Ex. N to Br. in Support of Pet. at 1; Ex. D to Br. in Support of Pet. at 4.)

Petitioner argues that the second requirement of *Wolff* was not met because he was not allowed to present documentary evidence in the his defense. The Ingham County Circuit Court rejected Petitioner's arguments, providing:

> This Court finds that Petitioner was afforded ample due process in connection with these charges. Additionally, the Court finds nothing improper about the record of testimony made at the hearing or the investigation that was conducted. There is no evidence that the hearing was not conducted in accordance with applicable law. Additionally, the Court finds nothing improper about the way the investigation was conducted.

(Ex. D. to Br. in Support of Pet. at 4, docket #1-3.) A federal habeas court may not find a state adjudication to be "'unreasonable' 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Instead, the question before this Court is whether the state court's application of clearly established federal law was "objectively unreasonable." *Williams*, 529 U.S. at 410.

Petitioner argues that the hearings investigator refused to obtain documentary evidence that would have been favorable to Petitioner's defense. (Am. Pet. at 8.) Specifically, Petitioner alleges that there was a video of him being searched prior to leaving the food service building. (Br. in Supp. at 7.) Petitioner asserts that this video would show him removing his glasses case from his right pocket with his right hand and then replacing them. He claims that it would show that he did not have a left pocket. (Br. in Supp. at 9.) There is no due process requirement that a hearings investigator must conduct his investigation in a certain way. *See Falkiewicz*, 271 F. Supp.2d at 948. As the state found, there was nothing improper about the way the investigation was conducted. Although Petitioner requested to review a different video, video evidence was introduced and Petitioner was seen reaching into the left side of his pants and then flicking his hand as if to throw something. Petitioner merely assumes that the other video would have shown that he had no pocket on that side. However, not only did two other prisoner witnesses testify those type of pants did have a left front pocket, a mere showing that Petitioner had no left front pocket was not critical to a determination that Petitioner had a razor blade. Accordingly, the state's court's determination was reasonable in light of the evidence presented at the major misconduct hearing and was not

contrary to clearly established federal law. Therefore, I find that Petitioner's due process claim as to the investigation of his Major Misconduct ticket lacks merit.

Petitioner's evidentiary claims against the hearings officer also lack merit. Petitioner asserts that the hearings officer improperly denied Petitioner's request for the production of the other video without providing an explanation. Petitioner further claims that he was not given access to the video despite the absence of a threat to institutional safety. (Am. Pet. at 8.) "Prisoners do not have an absolute, unfettered right to present evidence at misconduct hearings." *Falkiewicz*, 271 F. Supp. 2d at 948. In the MDOC Major Misconduct Hearing Report, the hearings officer noted that Petitioner testified that his pants did not have a left pocket and that all the prisoners were told by staff that they would be strip searched when they returned to their unit. (Ex. N to Br. in Support of Pet. at 1.) As the state court found, Petitioner was afforded ample due process and has failed to demonstrate that he was deprived of the opportunity to introduce evidence. (Ex. D to Br. in Support at 4.) Petitioner testified himself and also had two prisoner witnesses. Only Petitioner's own testimony supported a finding of not guilty and the hearings officer did not find it credible. (Ex. N to Br. in Support of Pet. at 1.) Petitioner was shown in video surveillance of the actual scene of the conduct in issue. He was identified by his clothing and distinctive walk and was observed flicking an object into the area where the razor blade was found. (Ex. D to Br. in Support at 4.) The testimony of both staff and prisoners, the video surveillance and physical evidence are indicative of Petitioner's guilt. Moreover, the issue of whether Petitioner had a pocket on his left side is tangential; even if Petitioner had no pocket, it would not have precluded him from keeping a razor tucked in the left side of his pants. Accordingly, the state court's determination was reasonable in light of the evidence presented at the major misconduct hearing and was not contrary to clearly

established federal law. Therefore, I find that Petitioner's due process claim as to the hearings officer lacks merit.

Once a court has decided that the procedural due process requirements of *Wolff* have been met, it must determine only whether there is "some evidence" which supports the decision of the prison disciplinary officer or board. *See Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985). As previously discussed, ample evidence supported the misconduct decision. For all the reasons set forth in the Major Misconduct Report and above, this Court finds sufficient evidence to support the hearing officer's finding of guilt on the "Possession of Dangerous Contraband" charge. Based upon the foregoing, I find that the prison disciplinary proceedings in Petitioner's case complied with the requirements of *Wolff*.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat

anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

An Order and Judgment consistent with this Opinion will be entered.


Dated:     5/13/2010                    /s/ R. Allan Edgar
                                        R. Allan Edgar
                                        United States District Judge